UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DWIGHT S. LACRETTE,<br><br>　Plaintiff,<br><br>v.<br><br>MSI CREDIT SOLUTIONS, LLC,<br><br>　Defendant. | CIVIL COMPLAINT<br><br>CASE NO. 3:23-cv-00522<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

NOW comes DWIGHT S. LACRETTE ("Plaintiff"), by and through the undersigned, complaining as to the conduct of MSI CREDIT SOLUTIONS, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, violations of N.Y. Gen. Bus. Law § 349 *et seq.,* and violations of the New York Credit Services Business Statutes pursuant to N.Y. Gen. Bus. Law § 458-a *et seq.,* in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides within, conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Northern District of Texas.

## PARTIES

4. Plaintiff is a "person," as defined by 47 U.S.C. § 153(39), and consumer over 18 years of age, residing in Liberty, New York.

5. Defendant is a credit repair organization offering consumers the ability to improve their credit through its offered services. Defendant is a limited liability company organized under the laws of the state of Texas with its principal place of business located at 12750 Merit Drive, Suite 400, Dallas, Texas.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In approximately February 2022, Plaintiff was looking to improve his credit by having certain information removed from his credit report, and subsequently began looking into various credit repair companies.

9. Plaintiff subsequently happened upon Defendant's services through certain advertisements and posts appearing on TikTok.

10. Plaintiff subsequently spoke with Defendant.

11. Defendant represented that it would work on disputing Plaintiff's information appearing on his credit report, and affirmatively represented that results would be delivered shortly after Plaintiff made certain upfront payments and monthly payments for Defendant's services.

12. Defendant both explicitly and implicitly represented that its services would improve Plaintiff's credit, and guaranteed results would be provided within 6 months of using Defendant's services.

13. Finding the nature of Defendant's representations desirable, Plaintiff subsequently entered into a contract with Defendant for the provision of its services.

14. Plaintiff paid an initial fee of $870.00 to Defendant prior to Defendant completing the services it represented it would perform for Plaintiff.

15. Defendant's characterized this initial payment as being completed in connection with tasks such as gathering information regarding Plaintiff and inputting Plaintiff into its system, and did not include the full and complete performance of the credit repair services it represented it would provide to Plaintiff.

16. Defendant performed these "initial services" within 3 days of Plaintiff signing up for Defendant's services.

17. After this initial upfront fee, Plaintiff began making payments of approximately $98.00 to Defendant for its services.

18. Plaintiff maintained these payments to Defendant for approximately 6 months.

19. Despite Plaintiff's payment of the initial fees and monthly payments made for many months, Defendant failed to get any information removed from his credit reports or otherwise provide any improvement to Plaintiff's credit score, let alone provide the services or deliver the results in the manner such services were initially represented to Plaintiff.

20. Upon information and belief, Defendant engages in a pattern and practice of overpromising the results and improved credit consumers can experience through its services, with

consumers only becoming wise the nature of Defendant's deception after thousands of dollars in payments have been made.

21. Defendant is engaged in a fraudulent scheme whereby it accepts consumers' payments on an upfront basis prior to completely performing the services it agreed to perform, and seeks to justify its conduct through contractual language.

22. Plaintiff subsequently cancelled his agreement with Defendant.

23. Despite Plaintiff cancelling his agreement, Defendant failed to refund Plaintiff for payments made in connection with results and services Defendant never ultimately completed, despite its statutory and contractual obligation to do so.

24. Frustrated, distressed, and confused over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

25. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm stemming from payments made for deficient credit repair services, further out of pocket damages, as well as numerous violations of his state and federally protected interests to be free from fraudulent and deceptive conduct on the part of credit repair organizations.

COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

26. Plaintiff repeats and realleges paragraphs 1 through 24 as though fully set forth herein.

27. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

28. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or

providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA §§ 1679b(a)(3)-(4)

29. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

30. Defendant violated the above provisions of the CROA through the false and deceptive representations it made to Plaintiff regarding the efficacy of its offered services. Defendant represented to Plaintiff that its services would improve Plaintiff's credit as derogatory information would be removed from his credit. However, despite Plaintiff paying thousands of dollars for Defendant's services, Defendant failed to deliver any results or the improved credit it promised would be provided when Plaintiff signed up for Defendant's services. Defendant had more than enough time to deliver the results, as Plaintiff made payments for approximately half a year, yet Defendant did nothing and simply collected Plaintiff's payments for services it ultimately failed to perform.

31. Defendant further violated the above provisions of the CROA through its fraudulent billing practices. Defendant charges consumers, and charged Plaintiff, exorbitant upfront fees in connection with "services" it represented it would perform. However, these services were merely administrative tasks that were in no way indicative of the complete performance of the credit repair services it agreed to perform. That Defendant provides these services during the time period

during with the CROA prohibits any services to be provided further illustrates Defendant's fraudulent efforts to charge exorbitant upfront fees prior to fully completing the services that would justify its retention of such payments. Defendant's conduct seeks to leverage the desperation of consumers for improved credit into making exorbitant payments for services that are ultimately not performed.

32. Defendant further violated the above provisions of the CROA through the fraudulent and deceptive nature of its guaranteed results. Defendant guarantees that results would be delivered, and that refunds of payments will be provided in the event no results are delivered. Despite Defendant's failure to deliver any results for Plaintiff, it retained Plaintiff's payments and failed to refund Plaintiff for payments made.

33. Defendant further violated the above provisions of the CROA through its fraudulent effort to justify its billing practices through its contractual language. Defendant's contract provides that any payments received are in connection with services that have already been completed. However, Defendant collected and retained Plaintiff upfront and monthly payments despite failing to deliver any results or fully completing the services that would justify the retention of such fees. Defendant's contract plainly seeks to sidestep the CROA requirements by having its clients acknowledge that fees paid are in connection with services that have already been performed.

    b. **Violations of CROA § 1679b(b)**

34. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

35. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Defendant improperly charged Plaintiff a "setup" fee before performing any work for Plaintiff. Thereafter, Defendant persistently charged Plaintiff for services it failed to fully perform prior to accepting Plaintiff's payments.

    c. **Violation of CROA § 1679c**

36. The CROA, pursuant to 15 U.S.C. § 1679c(b), provides that the disclosures required by the CROA must be provided in a form separate from any contract executed between a credit repair organization and buyer.

37. Defendant violated § 1679c(b) by providing the required disclosures in the contract it entered with Plaintiff, rather than in a separate document. Defendant engaged in this conduct so as to diminish the extent to which Plaintiff would be knowledgeable of his rights under the CROA and various other laws, hoping that keeping Plaintiff in the dark would allow Defendant to perpetrate its fraudulent and deceptive conduct upon a consumer who was unaware of their rights. Had Defendant provided these disclosures in the required manner, Plaintiff would not have suffered the pecuniary harm brought about by Defendant's conduct.

    d. **Violation of CROA § 1679d**

38. The CROA, pursuant to 15 U.S.C. § 1679d(a)(2), provides that a credit repair organization is prohibited from providing *any* services within 3 days of a consumer executing a contract with a credit repair organization.

39. Defendant violated § 1679d(a)(2) when it performed services for Plaintiff within 3 days of Plaintiff signing up with Defendant. The "services" Defendant believes entitled it to the exorbitant initial payment from Plaintiff were purportedly performed within three days of Plaintiff signing up with Defendant, in plain violation of the CROA's requirements.

    e. **Violations of CROA § 1679f(b)**

40. The CROA, pursuant to 15 U.S.C. § 1679f(b), prohibits credit repair organizations from attempting to obtain a waiver of consumers' protections provided by the CROA.

41. Defendant violated § 1679f(b) through its numerous efforts to obtain Plaintiff's waiver of the protections provided by the CROA. Defendant attempts to obtain Plaintiff's waiver of the protections related to charging consumers prior to the *complete* performance of services for consumers. Defendant's contract further seeks to get Plaintiff to agree to waive any claims in connection with the representations Defendant made regarding its services outside of the contract with Plaintiff through the inclusion of a merger and integration clause.

WHEREFORE, Plaintiff, DWIGHT S. LACRETTE, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF N.Y. GEN. BUS. LAW §§ 349 *ET SEQ.*

42. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

43. N.Y. Gen. Bus. Law § 349(a) states that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

44. Defendant violated § 349(a) in much the same way it violated the various provisions of the CROA outlined above. Defendant engaged in a series of deceptive acts and practices in connection with the manner in which it provided credit repair services to Plaintiff.

WHEREFORE, Plaintiff, DWIGHT S. LACRETTE, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to N.Y. Gen. Bus. Law § 349(h);

c. Awarding Plaintiff statutory damages pursuant to N.Y. Gen. Bus. Law § 349(h);

d. Awarding Plaintiff treble damages pursuant to N.Y. Gen. Bus. Law § 349(h);

e. Enter an injunction restraining Defendant's further violations of law pursuant to N.Y. Gen. Bus. Law § 349(h);

f. Award Plaintiff punitive damages;

g. Award Plaintiff reasonable attorney's fees and costs pursuant to N.Y. Gen. Bus. Law § 349(h); and,

h. Awarding any other relief as the Honorable Court deems just and appropriate

### COUNT III – VIOLATIONS OF N.Y. GEN. BUS. LAW § 458-A

45. Plaintiff restates and realleges paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiff is a "consumer" as defined by N.Y. Gen. Bus. Law § 458-b.

47. Defendant is a "credit services business" as defined by N.Y. Gen. Bus. Law § 458-b.

    a. **Violations of N.Y. Gen. Bus. Law § 458-c.**

48. N.Y. Gen. Bus. Law § 458-c outlines the information statement that must be provided by a CSO to a consumer.

49. Defendant violated § 458-c by failing to provide the requisite information in the manner required by the statute.

### b. Violations of N.Y. Gen. Bus. Law § 458-e.

50. N.Y. Gen. Bus. Law § 458-e provides that "[i]t is hereby declared to be an unfair and deceptive trade practice and unlawful for a credit services business to receive or collect from a consumer any fee in advance of the performance of those services . . . ."

51. Defendant violated § 458-e through its charging of upfront fees before performing any services for Plaintiff

### c. Violations of N.Y. Gen. Bus. Law § 458-f.

52. N.Y. Gen. Bus. Law § 458-f outlines the requirements for contracts between consumers and CSOs.

53. Defendant violated § 458-f through its failure to provide the requisite contractual statements and disclosures in the manner required by New York law.

54. Defendant's non-compliant contract renders the entire contract void and unenforceable, as does it efforts to insulate itself from liability for its violations of law. *See* N.Y. Gen. Bus. Law § 458-g.

### d. Violations of N.Y. Gen. Bus. Law § 458-h.

55. N.Y. Gen. Bus. Law § 458-h outlines a number of prohibits practices on the part of credit services businesses.

56. Defendant violated § 458-h in much the same way it violated § 1679b(a) of the CROA.

WHEREFORE, Plaintiff, DWIGHT S. LACRETTE, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to N.Y Gen. Bus. Law § 458-i;

c. Awarding Plaintiff punitive damages pursuant to N.Y Gen. Bus. Law § 458-i;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to N.Y Gen. Bus. Law § 458-i; and,

e. Awarding any other relief the Honorable Court deems just and appropriate.

Dated: March 8, 2023

Respectfully submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Northern District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com

s/Eric D. Coleman
Eric D. Coleman, Esq. #6326734
Counsel for Plaintiff
Admitted in the Northern District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(331) 307-7648 (phone)
(630) 575-8188 (fax)
ecoleman@sulaimanlaw.com